**Dennis PICKETT and Albert Pickett,**
**Appellants (Defendants Below),**

v.

**PELICAN SERVICE ASSOCIATES,**
**Appellee (Plaintiff Below).**

No. 4–285A22.

Court of Appeals of Indiana,
Fourth District.

Aug. 20, 1985.

Rehearing Denied Oct. 7, 1985.

James H. Hanson, Scopelitis & Garvin, Indianapolis, for appellants.

Craig Pinkus, Mitchell Hurst Pinkus Jacobs & Dick, Indianapolis, for appellee.

CONOVER, Judge.

Defendants-Appellants Dennis Pickett and Albert Pickett bring this interlocutory appeal contesting the issuance of a preliminary injunction prohibiting their continued employment in the waste disposal business within 75 miles of Crawfordsville, Indiana.

We affirm, but remand for the setting of bond.

ISSUE

The single issue [1] presented for our review is whether the trial court abused its discretion when it entered the preliminary injunction.

FACTS

In September, 1981, Pelican Service Associates (Pelican) purchased Pickett Sanitation Services, a trash removal, business, from Dennis and Sonya Pickett. Albert Pickett, son of Dennis and Sonya Pickett, was employed by Pickett Sanitation Service.

The written Asset Purchase Agreement (agreement) included a noncompetition clause with a provision for the future employment of Dennis and Albert. The agreement was signed by Dennis and Sonya. Albert received some of the proceeds from the sale of this family business but did not sign the agreement. Immediately upon completion of the transaction, Dennis and Albert were employed by Pelican. In accordance with the terms of the agreement, they executed covenants not to compete with Pelican in the trash disposal business. These covenants were executed the day the agreement was signed and were attached to it as exhibit C.

---

1. Appellants formulated 2 issues. We have restated them and discuss herein the points raised by each.

In March, 1984, Dennis and Albert quit working for Pelican and took employment with Global Waste Services, Inc. (Global), a competitor of Pelican. Pelican sued Dennis and Albert Pickett and others seeking a preliminary injunction to enforce the non-competition clause against Dennis and Albert pending the outcome of the lawsuit. Following hearing, the trial court granted the preliminary injunction.

Dennis and Albert appeal. Additional facts as necessary for our review are noted below.

## DISCUSSION AND DECISION

Appellants contend the court erred because (1) Pelican has no reasonable likelihood of prevailing at trial, and (2) no security was required of Pelican as required by Ind.Rules of Procedure, Trial Rule 65(C).

We have recently restated the oft-cited standard of review:

> When reviewing a trial court's ruling on a motion for a preliminary injunction, we are confined to determining whether the court abused its discretion. ... We decide a trial court has abused its discretion when it has made a decision that is clearly erroneous—one against the logic and effect of the facts and circumstances presented or the reasonable, probable, and actual deductions to be drawn therefrom. Our task here boils down to investigating whether the findings of fact, made by the court and as required for a preliminary injunction pursuant to Ind. Rules of Procedure, Trial Rule 52(A), are sufficient to validly support the result reached in the court's decision and, that done, whether those findings are supported by evidence of probative value. Additionally, we may not weigh conflicting evidence but may only consider that evidence supporting the trial court's findings, conclusions, and order. ...
>
> The establishment of a prima facie case for relief on the merits rests on the party seeking relief. Such applicant is not required to plead and prove a case that shows he will ultimately be entitled to relief. It is necessary only that the pleadings and evidence be such that it

makes out a case for a proper investigation in equity and that the status quo be maintained pending such trial on the merits. (Citations omitted).

*Harvest Insurance Agency v. Inter-Ocean Insurance Co.* (1985), Ind.App., 478 N.E.2d 98, 103–104.

The trial court entered the following findings of fact, conclusions of law and judgment:

## FINDINGS OF FACT

1. Pelican, a limited partnership located in the city of Crawfordsville, Indiana, is in the business of industrial, commercial and residential solid waste collection in the city of Crawfordsville in Montgomery County, Indiana.

2. On or about September 29, 1981, Pelican purchased substantially all of the assets, subject to liabilities, of Pickett's Sanitation Services. The acquired company was a competitor of Pelican which was owned by Dennis and his wife, Sonya Pickett. Dennis and Albert Pickett were employed by Pelican from that time until they terminated their employment with Pelican on or about March 28, 1984, to begin working for Global, also a competitor of Pelican's.

3. The agreement, pursuant to which Pelican acquired Pickett's Sanitation Services, was entitled "Asset Purchase Agreement: and provides in part as follows:

## AGREEMENT

NOW, THEREFORE, in consideration of these premises, and the mutual covenants and agreements contained herein, the parties hereto agrees (sic) as follows:

1. *Assets purchased ...*

2. *Purchase price ...*

3. *Seller Representatives and Warranties ...*

4. *Liabilities, Indemnification and Set Off ...*

5. *Employment.* Purchaser agrees to employ Dennis Pickett and his son Albert Pickett and Dennis Pickett and

Delbert (sic) Pickett accept employment with Pelican for such term and upon such conditions as Pelican shall determine in its sole discretion. Dennis and Albert Pickett shall be employees at will and may be terminated at any time for any reason by Purchaser. Dennis and Albert Pickett agree to use their best efforts to encourage accounts previously serviced by Seller to use Purchaser in the future. In consideration for such employment Dennis Pickett and Albert Pickett agree to execute at closing an Agreement in form and content similar to Exhibit C. attached hereto.

6. *Expenses and Commissions* ...

7. *Miscellaneous* ...

In Witness whereof ...

4. Attached to the agreement, set forth in paragraph 3 above, as Exhibit C, are two Agreements one signed by Dennis R. Pickett and one signed by Albert D. Pickett which are dated September 29, 1981 and which reads as follows:

For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned agrees that during the term of his employment with Pelican Service Associates, ("Pelican") and for a period of five (5) years from the date of termination of his employment, for whatever reason, he shall not directly or indirectly engage in any scavenger or trash hauling service or compete with Pelican or is (sic) successors in interest in any way within a seventy-five (75) mile radius of Crawfordsville, Indiana. Indirect competition shall be deemed to include the undersigned's or his spouse's involvement, as an employee, promoter, investor, shareholder, partner, consultant, officer, agent, or representative of any entity or person engaged in a scavenger, trash hauling, recycling or disposal operation. Given the nature of his employment with Pelican and the nature of the information to which he will have access, the undersigned acknowledges that the limitations contained herein are reasonable.

5. It is clear from a plain reading of the asset purchase agreement and the covenant agreement that the employment of Albert and Dennis Pickett, subject to the terms and conditions set forth in the documents, was an integral and negotiated part of the sale of the business.

6. Dennis had been in the trash removal business for some 14 years starting out as a one man, one truck operation and building a substantial business. He knew many of the customers personally, solicited many of them and was personally involved in every aspect of the business.

7. Pelican was buying out the competition. It paid more than $87,000.00 for the business, of which $6,500.00 was in cash to Dennis Pickett, the balance going to pay debts and liabilities of the Pickett business. Pelican was buying the assets of the business, trash route, the opportunity to service established customers, and the good will of Pickett, personally, and of his business.

8. The employment was part and parcel of the deal to buy the whole business and not a separate transaction. Not only did Pelican have a substantial investment to protect, Pelican also was by employing Pickett acquiring his skill, knowhow, and expertise.

9. Global Waste Service, Inc. is a trash removal business which competes with Pelican in the Montgomery County, Indiana area and which has operations in or is related to operations conducted by the owners of Global in Bloomington, Indiana; Switz City, Indiana; Robinson, Illinois; Linton, Indiana, all of which cities are roughly (sic) fifty to seventy-five miles from the city of Crawfordsville, Indiana.

10. Dennis Pickett, when working for Pelican solicited business, made surveys, and otherwise conducted business on behalf of Pelican in the cities of Lafayette and Kokomo, Indiana.

11. Trash removal is no longer necessarily a local business. Given the present highway system, reliable trucks and vehicles capable of efficiently hauling large loads, the financial capability of owners to estab-

lish and manage operations in different cities many miles apart the 75 mile restriction in the covenant not to compete is a reasonable distance.

12. A five year term on the covenant not to compete in the proscribed area is reasonable under the facts and circumstances of this case.

13. Since leaving Pelican, Dennis Pickett has solicited approximately 200 customers as part of his employment with Global of which 70 have signed up to be served by Global. All of those 70 were previously Pelican customers.

14. It is obvious that Pelican has and will have suffered loss of business as a result of Pickett's activities on behalf of Global. The amount of such damage will be difficult if not impossible to determine.

15. Albert Pickett has solicited new customers on behalf of Global after leaving Pelican.

## CONCLUSIONS OF LAW

1. The restrictive covenants are reasonable and were negotiated at arms length between a willing buyer and a willing seller.

2. The restrictive covenants are being violated by Dennis Pickett and Albert Pickett.

3. The violation of the restrictive covenants by Dennis Pickett and Albert Pickett is causing damage and irreparable harm to Pelican and such damage and harm continues absent an injunction restraining breach of the covenants.

4. Pelican has no adequate remedy at law and the preliminary injunction is necessary to stop the breaches of the covenants and maintain the status quo until the entire dispute can be resolved.

5. Pelican, as plaintiff has demonstrated a reasonable likelihood of success at trial.

6. Dennis Pickett and Albert Pickett have skills of driving trucks which would permit other employment if the preliminary injunction were granted, and while they would suffer some harm and dislocation as a result of the preliminary injunction, they cannot be allowed to continue to breach the covenant with impunity to the harm and detriment of Pelican.

## JUDGMENT

It is Therefore Ordered, Adjudged, and Decreed that Albert Pickett and Dennis Pickett be and they are hereby enjoined from continuing to work for Global Waste Services, Inc., any other firm, corporation or person or themselves in any way, form, or manner that competes with Pelican within a seventy-five mile radius of Crawfordsville, Indiana for a period of five years from the termination of their employment with Pelican or until further order of this court.

/s/ Thomas K. Milligan
Judge, Montgomery Circuit Court

Although some of the findings of fact and conclusions of law should have appeared in opposite categories, we do not find the trial court's decision clearly erroneous.

### I. *Reasonable Likelihood of Prevailing at Trial*

First, the Picketts contend the trial court erroneously concluded Pelican had a reasonable likelihood of success at trial. They specifically claim:

1. The noncompetition agreements were given in consideration of employment not as part of the sale of the business. (Court findings of fact nos. 5, 7, 8).

2. Pelican has no protectable interest (Court findings of fact nos. 6, 7, 8, 13).

3. The noncompetition covenants are geographically overbroad. (Court findings of fact nos. 9, 11).

4. The five year time restraint is excessive. (Court finding of fact no. 12).

The evidence most favorable to the trial court's findings include, inter alia,

(a) the Asset Purchase Agreement,

(b) the testimony of Pelican general partner, Bud Stanley,

(c) the testimony of expert witness, Dallas Schnitizius, and

(d) the testimony of Dennis Pickett.

### 1. Consideration: Employment or Sale of Business

The trial court concluded the noncompetition agreement was an integral and negotiated part of the sale of the business. We do not believe this conclusion is clearly erroneous. Item 5 [2] of the agreement provided Dennis and Albert each would execute noncompetition covenants. The evidence presented shows they signed the covenants the same day the agreement was signed. These covenants were attached to the agreement as exhibit C. Although Albert did not sign the agreement, both Albert and the parent Picketts received part of the cash consideration tendered for the business. (R. 571). In addition, Dennis and Albert were employed by Pelican until they voluntarily terminated the employment relationship.

▪ Picketts urge error because of the isolated phrase "in consideration for such employment...." A technical construction should not be given to an isolated clause to defeat the true meaning of a contract. *See, Boswell v. Lyon* (1980), Ind. App., 401 N.E.2d 735, 740 *(trans. denied); cf. Osolo School Buildings, Inc. v. Thorleif Larsen and Son of Indiana, Inc.* (1985), Ind.App., 473 N.E.2d 643, 645; *Anderson v. State Farm Mutual Auto Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170, 1172; *Ft. Wayne Cablevision v. Indiana and Michigan Electric Co.* (1983), Ind. App., 443 N.E.2d 863. Here, in addition to employment, the Picketts were promised cash and the assumption of $76,900 in liabilities. (R. 490–498). Further, Dennis and Albert promised to "use their best efforts to encourage accounts previously serviced

by [them] to use [Pelican's services] in the future." Schnitizius testified to the necessity of such covenants when purchasing family businesses and Dennis Pickett testified concerning Albert's considerable involvement in the operation of the business. (R. 451). It was not clearly erroneous for the trial court to find the covenant not to compete given as part and parcel of the business sale transaction rather than merely for employment.

### 2. Pelican's Protectable Interest

Pelican purchased (a) the assets of an ongoing business and (b) an agreement not to compete from the owners of that business. Picketts assert Pelican has no protectable interest. We disagree.

▪ The trial court determined Pelican had paid a substantial sum of money for the business assets, including goodwill, to buy out its competition. This conclusion is not clearly erroneous. Indeed, it is supported by the evidence, including the testimony of Stanley (R. 380–411, 553–572) and Schnitizius (R. 527–552). Agreements of this type reflect the value of the customer's affiliation with the selling business. This value is part of the bargain sought by the buyer. *See, e.g., McCart v. H & R Block, Inc.* (1984), Ind.App., 470 N.E.2d 756, 763, *reh. denied* (1985). Here Pelican purchased Pickett's patron list as part of the assets of the business. This, in the light of Pelican's substantial financial investment, was an interest in need of protection. It alone is a sufficiently protectable interest to justify the trial court's interlocutory order. The need for such protection was amply exhibited by Dennis Pickett's proposal to lure away some 200 of Pelican's customers which resulted in the loss to Pelican of some 70 of those customers.

---

**2.** 5. *Employment.* Purchaser agrees to employ Dennis Pickett and his son Albert Pickett and Dennis Pickett and [A]lbert Pickett accept employment with Pelican for such term and upon such conditions as Pelican shall determine in its sole discretion. Dennis and Albert Pickett shall be employees at will and may be terminated at any time for any reason by Purchaser. Dennis and Albert Pickett agree to use their best efforts to encourage accounts previously serviced by Seller to use Purchaser in the future. In consideration for such employment, Dennis Pickett and Albert Pickett agree to execute at closing an Agreement in form and content similar to Exhibit "C" attached hereto.

### 3. Geographical Overbreadth

■ The trial court found the 75 mile restriction was not unreasonable. Although this is an issue to be decided on the merits at trial, it was not clearly erroneous as an interlocutory finding. The evidence included:

(a) Pelican's competitor, Global, for whom the Picketts now wish to work, had operations within that radius,

(b) economic feasibility required such distance (Schnitizius's testimony, transcript 545–547), and

(c) Picketts had performed services for Pelican within and beyond the 75 mile radius (transcript 501–502).

This is sufficient evidence to support the finding Pelican needed protection within the area. Thus, this conclusion is not clearly erroneous. *Cf., Young v. Van Zandt* (1983), Ind.App., 449 N.E.2d 300; *Frederick v. Professional Building Maintenance Industries, Inc.* (1976), 168 Ind.App. 647, 344 N.E.2d 299.

### 4. Reasonableness of the Five Year Restriction

■ The trial court determined the five year term of the covenant not to compete was reasonable under the facts and circumstances of this case. We agree. Again, although this is a finding to be made on the merits at trial it is not clearly erroneous to have so found for the purpose of this interlocutory order.

Because of the personal nature of the business, the testimony of expert witness Schnitizius concerning the need to protect the routes and customers, and the significant consideration given for the agreements including employment of the Picketts, it was not an abuse of judicial discretion for the court to conclude the five year term of the covenant was reasonable under the circumstances. *See, McCart v. H & R Block, Inc.*, 470 N.E.2d at 764; *Miller v. Frankfort Bottle Gas Co., Inc.* (1964), 136 Ind.App. 456, 202 N.E.2d 395, 398–99.

The trial court's findings of fact were supported by sufficient evidence of probative value. The trial court's conclusions the covenants were not unreasonable and Pelican is likely to prevail at trial are not clearly erroneous. Thus, there was no abuse of discretion on these points.

## II. Security

■ Finally, Picketts contend the trial court erred in granting Pelican's request for preliminary injunction without requiring Pelican to give security as required by Ind.Rules of Procedure, Trial Rule 65(C). Trial Rule 65(C) provides:

> Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of a governmental organization, but such governmental organization shall be responsible for costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

> The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.

Picketts urge the language of Trial Rule 65(C) renders issuance of a preliminary injunction without bond void entitling them to recover damages for having been wrongfully enjoined. We disagree. Many Indiana cases recite the rule requiring posting of sufficient security to obtain a preliminary injunction. However, the failure to require security has not been the issue in any of the recent cases. *See, e.g., Traylor, et al. v. By-Pass 46 Steak House, Inc., et al.* (1972), 259 Ind. 224, 285 N.E.2d 820, (issue of "clean hands" and sufficiency of evidence to support trial court order); *Muehlman v. Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591, *(reh. denied)* (issue was whether trial court abused discretion regarding *amount* of bond); *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679, 683 (issue was prima facie case requirement); *Good v. Crowel* (1981), Ind.App., 416

N.E.2d 899, (issue was whether defendant was entitled to attorney's fees); *Peters, et al. v. Davidson, Inc.* (1977), 172 Ind.App. 39, 359 N.E.2d 556, 561–562, *(reh. denied) (trans. denied)* (issue concerned the *amount* of bond fixed by the trial court); *Howard D. Johnson Co. v. Parkside Development Co.* (1976), 169 Ind.App. 379, 388, 348 N.E.2d 656, (issue of whether trial court abused discretion when it failed to *increase* bond); *Palace Pharmacy, Inc. v. Gardner and Guidone, Inc.* (1975), 164 Ind.App. 513, 329 N.E.2d 642, (issue of whether attorney fee was an element of damage).

Picketts urge us to adopt the reasoning of the Oregon Supreme Court in *In re Tamblyn* (1985), 298 Or. 620, 695 P.2d 902. That court determined any preliminary injunction void when issued without security under a rule substantially similar to our T.R. 65(C). The issue in *Tamblyn* arose in the context of an attorney disciplinary action. Our precedents state otherwise and we must follow them. Further, in light of Indiana precedent concerning the court's discretion in determining the amount of security, *see, e.g., Peters, et al. v. Davidson, Inc.*, 172 Ind.App. at 46–47, 359 N.E.2d at 561–562 we believe our approach the more reasonable.

Our Supreme Court has determined defects in an injunction bond are mere error not sufficient to void the decree. *See, e.g., City of Huntington v. Northern Indiana Power Co.* (1937), 211 Ind. 502, 5 N.E.2d 889, 891 (defect in bond under prior statute similar to T.R. 65; Burns Indiana Statute 1933, § 3–2017; § 1067 Baldwin's Indiana Statutes, 1934);[3] *Lewis v. Rowland* (1892), 131 Ind. 103, 29 N.E. 922 (judgment granting permanent injunction not void and not subject to collateral attack for failure to require bond). *See also, Reinders Brothers v. Rain Bird Eastern Sales Corp.* (7th Cir., 1980), 627 F.2d 44, 54. (Affirmed order granting preliminary injunction issued under Federal Rule of Civil Procedure, Rule 65(c) but remanded to comply with bond requirement); *cf., Wayne Chemical, Inc. v. Columbus Agency Service Corp.* (7th Cir., 1977), 567 F.2d 692, 701 (indigence justified excusing bond notwithstanding literal language of F.R.Civ.P. 65(c).

Therefore, we affirm the judgment granting the preliminary injunction but remand to the trial court for determination of sufficient bond under T.R. 65(C).

YOUNG, P.J., and MILLER, J., concur.

---

**3.** § 1067 Baldwin Ind.Stat.1934:

*Bond*—No injunction or restraining order shall be granted until the party asking it shall enter into a written undertaking, with surety to be approved by the court or judge, to the adverse party affected thereby, for the payment of all damages and costs which may accrue by reason of the injunction or restraining order. (Act 1881 (special session), p. 240 § 183).