John M. FOGLE and Karen Fogle, Appellants (Plaintiffs and Counter–Defendants Below),

v.

Asad A. SHAH, Employee Benefit Consultants of America, Incorporated, Parveen Shah, Sheikh A. Rahman and Kathleen B. Ukstins, Appellees (Defendants and Counter–Plaintiffs Below).

No. 54A04–8807–CV–221.

Court of Appeals of Indiana, Fourth District.

June 19, 1989.

James A. McDermott, Stanley C. Fickle, Michael A. Klein, Barnes & Thornburg, Indianapolis, for appellants.

Robert A. Garelick, Sandra L. Rothbaum, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, for appellees.

CONOVER, Presiding Judge.

Plaintiffs-appellants-sellers John and Karen Fogle (the Fogles) appeal the trial court's grant of permanent injunction in favor of defendants-appellees-buyers Asad

A. Shah, Employee Benefit Consultants of America, Incorporated (EBC), Parveen Shah, Sheikh A. Rahman and Kathleen B. Ukstins (together, Shah) enforcing covenants not to compete ancillary to the sale of a business.

Affirmed.

The Fogles present two issues for our review. Restated they are:

1. whether the three year twelve state geographical restriction contained in paragraph 19(a) of the stock purchase agreement is broader than necessary to protect the goodwill purchased from the Fogles and the territories they serviced as employees of EBC[1], and

2. whether the indefinite time restriction contained in paragraph 19(b) of the stock purchase agreement is reasonable.

Fogle and Associates (F & A) was a pension consulting firm owned and operated by John and Karen. John held 80% of its stock. Shah, an entreprenuer, wanted to take his 118 clients from another pension consulting firm, buy another, and merge the two. Shah, after meeting John and Karen, began negotiations to purchase F & A. At that time, F & A had approximately 600 clients.

During these negotiations, Shah agreed to pay the Fogles a total of $1,000,000, $850,000 for John's stock and $150,000 for the covenants not to compete set forth below. Shah also agreed John and Karen would become employees of EBC, the new pension consulting firm Shah was creating. When Shah stated he needed a five year non-competition clause covering twelve states to protect the goodwill he was purchasing, John objected. They compromised by agreeing to a three year time restraint in paragraph 19(a) which coincided with the life of Karen's employment contract (John's ran for fifteen months).

The covenants not to compete read

(a) For a period of three (3) years from the date of closing, neither Seller [John Fogle] nor [Karen] Fogle shall, directly or indirectly, engage in any activities within the States of Indiana, Michigan, Ohio, Illinois, Kentucky, Missouri, Louisiana, Oklahoma, Wisconsin, Tennessee, Pennsylvania or West Virginia either as an owner, shareholder, director, officer, employee or in any other capacity, on behalf of himself or herself or any third party, which are competitive with respect to the services provided by the Seller prior to closing.

(b) Neither Seller nor Fogle shall at any time, or in any manner, directly or indirectly, solicit or accept any business which is competitive with respect to the services provided by Company [F & A] prior to closing from any person, firm, corporation or other entity which is a client of Company at the time of the closing or which had been such a client of Company at any time within the period of six (6) months prior to the date of the closing; nor shall Seller nor Fogle in any way, directly or indirectly, request or advise any client of the Buyer to withdraw any business with Buyer.

Approximately one year later Karen was terminated for insubordination and John resigned. They formed another pension consulting business, naming it Actuaries and Benefit Consultants, Inc. (ABC). The Fogles began competing with Shah by contacting former clients.

The Fogles filed a complaint alleging Shah materially breached the Stock Purchase and Pledge Agreements. Shah answered and filed a counter-claim for injunctive relief. After trial on the merits, the trial court granted a permanent injunction against the Fogles finding the covenants not to compete were reasonable.[2] The Fogles appeal.

When reviewing the reasonableness of a covenant not to compete, we apply the traditional sufficiency of the evidence standard. *Unishops, Inc. v. May's Family Centers, Inc.* (1980), Ind.App., 399 N.E.2d 760, 763, n. 1. Covenants not to compete in employment contracts are in restraint of trade and not favored by the

---

**1.** We note paragraph 19(a) will expire by its own terms on September 2, 1989.

**2.** The only issue before this court is whether the covenants not to compete are reasonable.

law. *Licocci v. Cardinal Associates, Inc.* (1983), Ind., 445 N.E.2d 556, 561. They are strictly construed against the covenantee. *Young v. Van Zandt* (1983), Ind.App., 449 N.E.2d 300, 303. On the other hand, covenants involved in the sale of a business are not as ill-favored at law as are employee covenants. *Seach v. Richards, Dieterle & Co.* (1982), Ind.App., 439 N.E.2d 208, 212. The reasons for this distinction are well-stated in *Alexander & Alexander, Inc. v. Danahy* (1986), 21 Mass.App. 488, 488 N.E. 2d 22, 28:

> In the former situation (sale of a business) there is more likely to be equal bargaining power between the parties; the proceeds of the sale generally enable the seller to support himself temporarily without the immediate practical need to enter into competition with his former business; and a seller is usually paid a premium for agreeing not to compete with the buyer. Where the sale of the business includes good will, as this sale did, a broad noncompetition agreement may be necessary to assure that the buyer receives that which he purchased. ... On the other hand, an ordinary employee typically has only his own labor or skills to sell and often is not in a position to bargain with his employer. Postemployment restraints in such cases must be scrutinized carefully to see that they go no further than necessary to protect an employer's legitimate interests, such as trade secrets or confidential customer information. (Citations omitted).

See also Annot., 46 A.L.R.2d 114 (1951); 14 *Williston on Contracts* § 1641 at 122 (3rd ed.1972).

Employer-employee covenants not to compete are reviewed with stricter scrutiny than covenants not to compete ancillary to the sale of a business. *Harvest Ins. Agency v. Inter-Ocean Ins. Co.* (1986), Ind., 492 N.E.2d 686, 688. The territorial extent of a covenant not to compete ancillary to the sale of a business will be found reasonable with much greater readiness than the same provision would as part of a restrictive covenant ancillary to a contract of employment. Annot. 46 A.L.R.2d 114, 144 (1951).

In *Day Companies v. Patat* (1968), 5th Cir., 403 F.2d 792, 796, the court stated:

> Public Policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill, or talent by any contract that he enters into. On the other hand, public policy requires that when a man has by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and *in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser.* In such a case, the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject-.... (Emphasis added).

Covenants not to compete ancillary to the sale of a business reflect the value of the customer's affiliation with the particular business which is part of the bargain sought by the buyer. *McCart v. H & R Block, Inc.* (1984), Ind.App., 470 N.E.2d 756, 763. This "goodwill" is the protectable interest upon which the covenant not to compete focuses. *Id.* The goodwill of a business is an intangible asset which may be transferred from seller to purchaser, and it becomes the buyer's right to expect the firm's established customers will continue to patronize the purchased business. *Kraft Agency, Inc. v. Delmonico* (1985), 4 Dept., 110 A.D.2d 177, 494 N.Y.S.2d 77, 80–81. The seller reentering the market and competing with buyer for customers precludes buyer from receiving all that has been sold to him. *McCart, supra,* at 763. Agreements in partial restraint of trade ancillary to the sale of a business appear to be sanctioned because of the value of the goodwill purchased. *Bowen v. Carlsbad Ins. & Real Estate* (1986), 104 N.M. 514, 724 P.2d 223, 225.

The covenants not to compete here were included in the purchase agreement. The

agreement also contemplated John and Karen's employment by EBC. The three year limitation in paragraph 19(a) of the agreement was coterminous with Karen's employment. Thus, the covenants not to compete arose out of an arrangement having aspects of both the sale of a business and a contract of employment. The same type of agreement was analyzed by the *Alexander* court. It stated:

> It is not at all unusual for the seller of a business to join the new enterprise in an employment capacity. There are obvious advantages to both sides which flow from such an arrangement. It enables the purchaser to carry on the old business with the least possible dislocation and loss of good will. Established customers of the business sold could be expected to patronize the successor business. And such an arrangement provides the seller with the opportunity to be productive in the work with which he is familiar, and to gain income.

*Alexander*, 488 N.E.2d at 28.

In Indiana, the first step in analyzing a covenant not to compete ancillary to the sale of a business is discerning whether a protectable interest has been purchased. See e.g. *Pickett v. Pelican Service Associates* (1985), Ind.App., 481 N.E.2d 1113, 1118. The parties here agree Shah has a protectable interest in the goodwill of F & A.

■ A three-pronged test is applied in determining whether covenants not to compete ancillary to the sale of a business are overbroad. The elements of the test are:

(a) whether the covenant is broader than necessary for the protection of the covenantee (here, Shah) in some legitimate interest,

(b) the effect of the covenant upon the covenantor, (the Fogles), and

(c) the effect of the covenant upon the public interest. *Unishops, supra*, at 763. Of primary importance is the question of whether the covenant not to compete is reasonable as to the covenantee. Annot. 46 A.L.R.2d 114, 147–151 (1951), and

whether it is reasonable as to time, space and the activity restricted.

■ The Fogles contend paragraph 19(a) is spatially broader than necessary to protect Shah's interests. They point out in seven of the twelve states involved, F & A had a maximum of four customers and in the twelfth state, Louisiana, F & A had zero customers.

On the other hand, Shah argues F & A had 600 customers across eleven states while EBC had 128, there was hard, armslength bargaining over the covenants not to compete before he agreed to the three rather than five year temporal restriction in paragraph 19(a). Further Shah notes, he paid approximately $150,000 for the covenants and $850,000 for the goodwill and business, i.e., valuable consideration therefor, which included the Fogles' good working relationships with their former clients. To prove enforcement of the covenants is needed to protect his purchase, Shah points to the fact that since they severed their employer-employee relationships with him, the Fogles actually have solicited 30 of F & A's former clients to re-employ them and leave EBC. John himself testified he would continue to solicit and accept clients of EBC unless restrained by court order. In these circumstances, Shah argues to declare the geographical restriction void would be to deny him the benefit of his bargain. We agree with Shah.

Four factors are considered in determining whether the protection afforded a covenantee in a territorial restraint covenant ancillary to the sale of a business is reasonable under the circumstances, namely,

(1) the type of business sold,

(2) the effect of including territory into which the transferring business did not extend,

(3) the extent of the purchaser's original business as a factor, and

(4) the period of restraint.

Annot. 46 A.L.R.2d 114, 228–260 (1951). The most important of these factors is the type or nature of the business purchased. *Id.* For these purposes, businesses are separated into three categories, that is, businesses involving:

(1) services,

(2) distribution of goods, and

(3) the production, manufacturing, or processing of goods.

*Id.*

Here, F & A falls squarely within the first category. A covenant not to compete ancillary to the sale of a service-oriented business normally will be localized because services generally are performed within a small geographic area. *Id.* at 230. However, there will be cases such as the one at bar where the territory covered reasonably may extend over several states because of the business's nature. As our Supreme Court stated in *Consumers Oil Co. v. Nunnemaker* (1895), 142 Ind. 560, 41 N.E. 1048, 1051:

> Cases do and will arise, ... where the particular business has been built up so as to extend over an entire district or state, and sometimes beyond, or where, from its nature, the number of those who patronize it are comparatively of a limited number, and where, consequently, broad or enlarged restrictions are considered as reasonably necessary for the desired protection, and are therefore sustained.

The uncontroverted evidence establishes the pension consulting business is dependent upon familiarity with clients or client sources. Customers have repeated and multiple consulting needs. Prompt service, integrity, and loyalty are of great importance to customers. They tend to rely on key personnel who have demonstrated these qualities in the past. The record here establishes John and Karen had a successful rapport with their clients. They kept returning and referred their friends. As a result, F & A grew into a business which had gross billings of $1,040,000 from September 1985 to August 1986. If the Fogles were allowed to solicit their former pension consulting customers again, the goodwill Shah purchased would be destroyed. *Bowen, supra,* 724 P.2d at 226.

The size of the purchase price is an indication of both the necessity for, and the intention there should be, a substantial period of freedom from competition, *Bowen,* *supra,* 724 P.2d at 225, citing *Bonneau v. Meaney* (1961), 343 Mass. 368, 371, 178 N.E.2d 577, 579. Often a large part of the value paid and the principal inducement for paying a high price, consists in the protection afforded by a covenant not to compete. *Bowen, supra,* 724 P.2d at 225, citing, *Gonzales v. Reynolds* (1929), 34 N.M. 35, 37, 275 P. 922, 923. Here, $850,000 of the $1,000,000 Shah paid for F & A was for its goodwill. The other $150,000 was paid for the covenants not to compete. John testified he had decided he would not accept less than one million dollars for F & A. Shah gave him that price and sought to protect his purchase by having the Fogles' good name and expertise associated with his business. He did not want such worthy competitors vying for the clients he had purchased, he could attract, or which did business with EBC. Clearly, a broad spatial restraint is justified here.

The second factor in gauging whether the territorial exclusion is reasonable concerns the effect upon the covenantee of including territory therein into which the transferring business did not currently extend. The Fogles contend it was unreasonable to preclude them from competition in twelve states in their geographic entirety. In nine states, F & A had a maximum of four clients, one state, Louisiana, had zero and the other two, Indiana and Michigan, had approximately 583. The territorial restraint is greater than necessary to protect the goodwill of F & A, they argue. We disagree.

The person who purchases a business with the purpose of extending its scope is entitled to bargain with the seller against competition within the territory into which he plans to extend it. Annot., 46 A.L.R.2d 114, 253 (1951). Such contract is not opposed to public policy where the area it embraces is not greater than that which the parties may fairly anticipate the extended business will cover. *Id.;* see also *Westec Security Services, Inc. v. Westinghouse Elec.* (1982), 538 F.Supp. 108; *Schnucks Twenty–Five, Inc. v. Bettendorf* (1979), Mo.App., 595 S.W.2d 279, 286; Han-

dler, Blake, Pitofsky, Goldschmid, Trade Regulation—Cases and Materials 46 (1975).

It is readily evident the parties contemplated EBC would geographically expand throughout the whole of the twelve states listed in the covenant. That Shah was attempting to expand EBC's client base is illustrated by negotiations with a major client in Louisiana. John knew this fact and agreed to include Louisiana in the purchase agreement. These facts establish EBC was a growing business with plans to extend throughout the entire territory covered in the covenant. Further, by the plain words of their contract, the parties contemplated expansion into these areas.

With respect to the third factor, the extent of the purchaser's original business, EBC's 128 clients bolster the argument this covenant is territorially reasonable.[3] John and Karen were employed by EBC immediately after F & A was sold to Shah. The record establishes they would have contact with many of EBC's clients. Shah had a protectable interest in those clients in addition to the goodwill purchased from F & A.

Regarding the last factor time, the three year limit contained in paragraph 19(a) of the covenant is in and of itself reasonable. See e.g. *Pickett, supra*, at 1119. Further, Shah agreed to employ John for fifteen months and Karen for thirty-six months. Shah in paragraph 19(a) sought only to keep John and Karen from soliciting business in states where EBC did business and was negotiating to do business.

The plain meaning of the stock purchase and related pledge agreements establish the parties believed a three year, twelve state restriction was reasonable. The parties bargained at arms length. The evidence establishes each party to the agreement knew if John or Karen independently did business in any of the states where EBC did consulting it would materially damage the good will Shah had purchased. If John or Karen competed against EBC in any of the twelve states while EBC was in its infancy, a past, present or potential client of EBC might refuse to do business with it because of the personal relations such client had with John and Karen, the parties to the agreement believed.

The second *Unishops* element regards the effect of the promise upon the covenator (the Fogles). While the influence of this factor on the enforceability of employer-employee restraints is great, its importance in the sale or transfer of property is rather negligible. Annot. 46 A.L.R.2d 114, 261 (1951). As stated by the annotation textwriter:

> Generally speaking, an employee entering into a covenant not to compete receives little or no monetary compensation directly traceable to the covenant, as distinguished from the compensation for his work during his employment. The seller of a business on the other hand, in determining the sale price of the business, definitely puts a separate value on its good will, which is brought into existence or greatly enhanced by the agreement not to compete with the purchaser in a stated area. Having thus been specifically recompensed for his promise not to compete, the seller, whose bargaining power is usually not substantially inferior to that of the purchaser, has little appeal to the courts in a claim that the covenant is unduly harsh and oppressive as to the territory covered thereby. The courts have a natural reluctance to come to the aid of a person who has voluntarily entered into an agreement not to compete, accepted the—frequently very considerable—consideration for his promise and afterward wants to be absolved of his part of the bargain. *Id.*

The covenant is reasonable as to the Fogles.

The third *Unishops* element, reasonableness as to the general public, is also met in this case because any restraint on trade will be minimal at best. Shah testified pension consulting firms are a "dime a dozen" and noted there are twelve such

---

3. In *Donahue v. Permacel Tape Corp.* (1955), 234 Ind. 398, 127 N.E.2d 235, 238, cited by the Fogles, the court stated in dicta goodwill does "not relate to the scope of the business of the buyer." *Donahue* is distinguishable because it involved an employer-employee covenant not to compete rather than a covenant not to compete ancillary to the sale of a business.

firms in Indianapolis alone. Thus, the general public will not be harmed here by a restraint of trade. We find no error here.

■ The Fogles next contend the indefinite time limitation contained in paragraph 19(b) is unreasonable, citing *Harvest Insurance Agency, Inc. v. Inter–Ocean Insurance Co., supra,* at 690. Shah contends *Harvest* is distinguishable because it is a case involving an employer-employee covenant. He argues the indefinite time limitation is reasonable, citing *O'Neal v. Hines* (1896), 145 Ind. 32, 43 N.E. 946 and *Eisel v. Hayes* (1895), 141 Ind. 41, 40 N.E. 119. In *O'Neal,* the litigants were partners in the undertaking business. Plaintiff bought defendant's interest in the business and defendant signed a covenant not to compete. The covenant did not contain a time limitation. Defendant started competing with plaintiff and plaintiff filed an application to enjoin defendant. Our Supreme Court held a contract not to engage in a certain business in a certain place so long as the other party remains in such business in such place is not invalid if it is temporally indefinite. *Id.* 43 N.E. at 946; *Martin v. Murphy* (1891), 129 Ind. 464, 28 N.E. 1118, 1119 (court held indefinite time restriction in the sale of a professional business was reasonable).[4] See also *Beatty v. Coble* (1895), 142 Ind. 329, 41 N.E. 590, 592 (court held indefinite covenant not to compete ancillary to the sale of a medical practice was reasonable).

The Fogles argue *O'Neal* was overruled by *Harvest.* We disagree.

*Harvest* does not overrule or even mention *O'Neal. Harvest,* an employer-employee case, is inapposite to the facts of *O'Neal* because *O'Neal* involves a restrictive covenant ancillary to the sale of a business.

The Fogles next contend *O'Neal* is distinguishable because the court required a precise geographical limitation to be in place before an indefinite time restraint could be upheld. We disagree.

A definite geographic restraint is in place here because the Fogles are limited from contacting former clients. Those former clients are located in specific locations. In fact, paragraph 19(b)'s client-specific restriction could not be more limited in its geographic scope. Accordingly, this argument is meritless and the temporal limitation, although indefinite, is reasonable.

When reviewing reasonableness as to the covenantee in the context of a temporal restriction, the type of business involved must be considered. *Duffy v. Shockey* (1858), 11 Ind. 70, 71 Am Dec. 348; Annot., 45 A.L.R.2d 71, 154 (1949). Businesses are categorized here, just as they are when reviewing a territorial restraint. Annot., 45 A.L.R.2d 71, 154–156 (1949). Businesses involving services all have in common the fact the customer is in most cases personally attached to the person rendering the services. *Id.* An extended period of time is thus required to secure the benefit of the purchaser's bargain. *Id.* Here, the record establishes the pension consulting business is dependent upon familiarity with clients, and the Fogles had long standing personal relationships with many of EBC's clients. The indefinite time limitation is thus reasonable to protect the goodwill Shah purchased.

Reasonableness to the covenantor is not an important factor in reviewing the validity of a temporal restraint ancillary to the sale of a business. 45 A.L.R.2d 71, 179 (1949). Thus, the contract was not unduly harsh or oppressive in this regard. Its terms were bargained for and the Fogles received ample consideration in exchange for their agreement.

Finally, the indefinite time restraint is not injurious to the general public since there is an abundance of pension consulting businesses. The Fogles have failed to establish any restraint on trade. We find no error here.

Affirmed.

MILLER and CHEZEM, JJ., concur.

---

**4.** We note textwriters have criticized this view. See Calamari & Perillo, *Contracts* § 16–19, 600–601 (1977).