**Nick KLADIS, and Alex Rodakis, Appellants–Defendants,**

v.

**NICK'S PATIO, INC. Appellee– Plaintiff.**

No. 71A03–0005–CV–191.

Court of Appeals of Indiana.

Oct. 6, 2000.

Brent E. Inabnit, Matthew R. Kaczmarek, Sopko, Nussbaum & Inabnit, South Bend, Indiana, Attorneys for Appellant Nick Kladis.

**1218**

Charles P. Rice, South Bend, Indiana, Attorney for Appellant Alex Rodakis.

Joseph L. Amaral, Hammerschmidt, Amaral & Jonas, South Bend, Indiana, Attorney for Appellee Nick's Patio, Inc.

## OPINION

BAKER, Judge

Appellants-defendants Nick Kladis and Alex Rodakis appeal the trial court's grant of a preliminary injunction against them pursuant to a noncompetition agreement Kladis had negotiated with the owners of Nick's Patio, Inc., (Nick's Patio), the appellee-plaintiff. Specifically, Kladis contends that landscaping work he performed for a competing business, after selling Nick's Patio, was not a legitimate, protectable interest of the noncompetition agreement. Kladis also maintains that the noncompetition agreement was overbroad. Moreover, Rodakis, as a nonparty to the agreement, claims that the injunction was wrongly entered against him because he did not knowingly aid Kladis in violating the agreement.

### FACTS

Kladis was the owner of Nick's Patio, a family restaurant, before selling it to Sam Samoilis and Alex Rodakis in December 1998. As part of the sale of his business, Kladis executed a noncompetition agreement that provided in relevant part:

> [Kladis,] for himself or for others, will not engage either directly or indirectly as an employee, owner, partner (dormant or otherwise), or as an agent, shareholder, director or officer of a corporation or a principal for his own account, or jointly with others, in a similar restaurant business which is directly or indirectly in competition with the type of business operated by the COMPANY

within a five (5) mile radius of 1710 North Ironwood, South Bend, Indiana.

Record at 398–99. Samoilis testified that the noncompetition agreement was an integral part of his purchase of Nick's Patio because of the goodwill Kladis had generated over the years as its owner. R. at 194. More specifically, Samoilis testified that Kladis "knew all the customers, pretty much, 80 percent . . . by their first names," "grew up with them," "gave them free meals," and "was the soul and heart of Nick's Patio." R. at 194. For this reason Samoilis directed his attorney "to put a strict law about . . . the covenant not to compete." R. at 194.

Samoilis later bought Rodakis's interest in Nick's patio, though Rodakis did not sign a noncompetition agreement as part of his sale. Rodakis then formed his own corporation to open a restaurant named the "Panorama," which was within the five-mile geographical limitation proscribed by the December 1998 agreement with Kladis. Before opening the Panorama, Rodakis needed to make interior renovations, repair the roof, and perform landscaping. He hired Nick Karamitsos to complete the interior renovations, leaving the roof repair and landscaping to Kladis.

While the roof repair and landscaping were underway, Nick's Patio filed an action against Kladis, seeking a preliminary and permanent injunction, damages, and a declaratory judgment with respect to the provisions of the noncompetition agreement. On April 28, 2000, the trial court, pursuant to Ind. Trial Rules 52[1] and 65,[2] entered specific findings of fact and conclusions of law and granted a preliminary injunction. The trial court found that Kladis had assisted in the preparing of Panorama's opening by: "performing certain landscaping outside the building, giv-

---

1. T.R. 52(A) provides in relevant part: "The court shall make special findings of fact without request (1) in granting or refusing a preliminary injunction[.]"

2. T.R. 65 provides in relevant part: "Every order granting temporary injunction . . . shall include or be accompanied by findings as required by Rule 52; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained . . . ."

ing directions to another laborer at the restaurant regarding work to be done inside the building, and meeting with Rodakis at the [Panorama]." Based in part on the finding that the threatened harm to Nick's Patio outweighed the potential harm to Kladis occasioned by the granting of the injunction, the trial court ordered, in part, the following relief:

> IT IS THEREFORE ORDERED that Nick Kladis is hereby temporarily enjoined, restrained and prohibited from engaging either directly or indirectly as an employee, owner, partner (dormant or otherwise), or as an agent, shareholder, director or officer of a corporation or a principal for his own account, or jointly with others, in a similar restaurant business which is directly or indirectly in competition with a type of business operated by Nick's Patio, Inc., within a five (5) mile radius of 1710 North Ironwood, South Bend, Indiana.

> IT IS FURTHER ORDERED that Alex Rodakis is hereby temporarily enjoined, restrained and prohibited from participating with Nick Kladis as the owner, partner (dormant or otherwise), or as agent, shareholder, director or officer of a corporation in any similar restaurant business which is directly or indirectly in competition with the type of business operated by Nick's Patio, Inc.....

R. at 112. Pursuant to Ind. Appellate Rule 4(B)(3),[3] Kladis and Rodakis now bring an interlocutory appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Before we reach the merits of this interlocutory appeal, we note that Nick's Patio failed to file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee.

*Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.App.1999). Applying a less stringent standard of review, we may reverse the trial court if the appellant can establish *prima facie* error. *Id.* However, we may in our discretion decide the case on the merits. *Ind. Dept. of Fin. Insts. v. Worthington Bancshares, Inc.,* 728 N.E.2d 899, 901 (Ind.Ct.App.2000). We exercise, in the instant case, our discretion to consider the merits of the issue presented.

■ Reviewing the case on the merits, we note that granting or denying a preliminary injunction is within the sound discretion of the trial court. *Harvest Ins. Agency v. Inter–Ocean Ins. Co.,* 492 N.E.2d 686, 688 (Ind.1986). Our review is limited to a determination of whether the trial court clearly abused that discretion. *Id.* This court has no authority to weigh the evidence and resolve factual controversy in determining the appropriateness of injunctive relief. *Fumo v. Med. Group of Michigan City,* 590 N.E.2d 1103, 1107 (Ind.Ct.App.1992). Rather, we look to the trial court's findings of fact as required by T.R. 52 and 65. However, we review questions of law and the overall sufficiency of the evidence as a matter of law with no deference given to the trial court's determination. *Id.*

■ Discretion to grant or deny an injunction is measured by several factors: 1) whether the plaintiff's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; 2) whether the plaintiff has at least a reasonable likelihood of success at trial; 3) whether the plaintiff's threatened injury outweighs the potential harm to the defendant resulting from the granting of the injunction; and 4) whether the public interest will be disserved. *Id.* at 1108.

---

3. App. R. 4(B)(3) provides:
   [A]ppeal from interlocutory orders shall be taken to the Court of Appeals in the following cases:
   . . . .

   (3) Granting, or refusing to grant, or dissolving or overruling motions to dissolve preliminary injunctions; or the appointment of receivers[.]

**1220**

## II. Kladis's Claim

■ Kladis contends that the trial court abused its discretion in granting the preliminary injunction. Specifically, he maintains that Nick's Patio has no protectable interest to warrant injunction of his providing landscaping services to another restaurant.

■ Before addressing the protectable interest of this noncompetition agreement, we begin by distinguishing employment noncompetition agreements from noncompetition agreements involved in the sale of a business. Employment noncompetition agreements are in restraint of trade and not favored by the law. *Licocci v. Cardinal Assocs., Inc.,* 445 N.E.2d 556, 561 (Ind.1983). They are strictly construed against the employer. *Id.* However, noncompetition agreements ancillary to the sale of a business are not as "illfavored at law" as employee covenants. *Fogle v. Shah,* 539 N.E.2d 500, 502 (Ind. Ct.App.1989). The different treatment results, in part, from the disparate bargaining power enjoyed by one selling a business as compared to an employee who has only labor and skill to offer. *Id.*

■ The first step in analyzing a noncompetition agreement ancillary to the sale of a business is to determine whether a protectable interest has been purchased. *Id.* at 503. Generally, the agreement attempts to preserve a business's "goodwill" for the buyer. *Id.* at 502. "Goodwill" is an intangible asset and, when transferred, allows the buyer to expect that "the firm's established customers will continue to patronize the purchased business." *Id.; see also Pickett v. Pelican Serv. Assocs.,* 481 N.E.2d 1113, 1118 (Ind.Ct.App.1985) ("Agreements of this type reflect the value of the customer's affiliation with the selling business."). If a seller reenters the market and competes for the same customers, the buyer will fail to receive all that has been sold to him. *Fogle,* 539 N.E.2d at 502; *McCart v. H & R Block, Inc.,* 470 N.E.2d 756, 763 (Ind.Ct.App.1984).

■ In the instant case, Kladis concedes that Samoilis has a protectable interest in the goodwill Kladis developed while owner of Nick's Patio. Appellant's brief at 8. Given the outcome of our inquiry into the bargained-for protectable interest, we need not proceed to the next step of the analysis: the reasonableness of the agreement. *See Fogle,* 539 N.E.2d at 503.

The instant case presents a factual situation analogous to our decision in *Lueth v. Gardner,* 541 N.E.2d 298 (Ind.Ct.App. 1989) (holding that seller of an auto *repair* business was not restricted by a noncompetition agreement from working for an auto *parts dealer*). The agreement in *Lueth* prohibited the seller from " 'competing with or against [the buyer] in the motor vehicle repair and service business' " in " 'any fashion, form, manner, either directly or indirectly.' " *Id.* at 299 (alteration added). This court reasoned that the intent of the noncompetition agreement did not encompass auto part sales because, when the agreement was formed, such auto part sales were an inconsequential part of the seller's business. *Id.* at 300. In other words, the seller was not providing the same service for a competing business.

Our inquiry then must focus on the kind of service Kladis has rendered for the competing restaurant and whether this service indicates Kladis has "reentered the market to compete for the same customers." *See Fogle,* 539 N.E.2d at 502. The trial court found that Kladis had performed certain landscaping work for a competing restaurant; gave directions to another laborer in the restaurant regarding work to be done inside the building; and met with the owner of the competing restaurant, Rodakis, on the restaurant's premises. First, landscaping, was not a service provided by Nick's Patio. Because landscaping was not a service of Nick's Patio when the agreement was formed, Nick's Patio has not proved that such an activity fell within the purview of the noncompetition agreement. Similarly,

Nick's Patio has not shown that directing a laborer to perform repair work inside a restaurant and meeting with the competing owner inside a restaurant were activities falling within the purview of the noncompetition agreement.

In sum, without more, these activities do not indicate that Kladis has reentered the restaurant business to compete for the same customers who patronized Nick's Patio. Consequently, Nick's Patio has failed to show Kladis's activities impinge on the goodwill bargained for in the noncompetition agreement. Because Nick's Patio has failed to show that the contractually bargained-for goodwill has been harmed, the protections of the noncompetition agreement are not triggered. We conclude, then, as a matter of law that there was insufficient evidence to warrant the injunction against Kladis.[4] *See Fumo,* 590 N.E.2d at 1107.

### III. *Rodakis's Claim*

Rodakis also contends that the trial court erred in entering the injunction against him. Specifically, Rodakis claims that there are no findings that he knowing-ly participated with Kladis and aided him in violating the noncompetition agreement. Under Indiana law, one not a party to a noncompetition agreement may be enjoined from assisting a party to such an agreement from breaching the same. *McCart,* 470 N.E.2d at 762. In the instant case, Nick's Patio has failed to show that Kladis violated the noncompetition agreement. Therefore, based on Nick's Patio's failure to show a breach by Kladis, Rodakis may not be subject to the injunction.

As a result, the interlocutory order for injunctive relief is dissolved, and we remand this cause for trial on the merits.

Reversed and remanded.

SHARPNACK, C.J., and VAIDIK, J., concur.

---

4. Kladis argues in the alternative that, if Nick's Patio has a protectable interest in landscaping services, then the noncompetition agreement is overbroad and unenforceable. Appellant's brief at 11. Because we have decided that Nick's Patio has no such protectable interest, we need not address the enforceability of the noncompetition agreement.