Ute **GIELSDORF–ALIAH**, Appellant
(Defendant Below)

v.

Hassan **ALIAH**, Appellee
(Plaintiff Below).

No. 45A03–9002–CV–62.

Court of Appeals of Indiana,
Third District.

Oct. 23, 1990.

Robert M. Hess, Hammond, for appellant.

Kenneth D. Reed, Abrahamson, Reed & Adley, Hammond, for appellee.

STATON, Judge.

Ute Gielsdorf–Aliah appeals an order that she pay $85.00 per week for the support of her two minor children. She presents two issues for our review:

I. Did the trial court err in *sua sponte* addressing the issue of child support when the parties' petitions addressed only visitation?

II. Did the trial court err in awarding an amount of child support determined solely by use of the Indiana Child Support Guidelines?

Reversed.

Ute and Hassan Aliah were divorced on November 21, 1986. Hassan was awarded custody of the parties' two children. Ute was granted "reasonable visitation" with the children but was required to make no child support payments until further order of court.

On June 12, 1989, Ute filed a petition to specify visitation. Evidence was heard on June 27, 1989, and the court took the matter under advisement. Ute subsequently filed a petition for rule to show cause, upon which argument was heard on July 19, 1989. At the July 19 proceeding, the court specified visitation terms, then *sua sponte* addressed the issue of child support.

The court ordered the parties to submit, within 10 days, Indiana Child Support Guideline worksheets. The worksheets were timely submitted to the court, with Ute filing an objection. The court found that Ute had substantially increased her income following the divorce and issued an order that she pay $85.00 child support per week, commencing July 19, 1989.

## I.

### *Trial Court's Sua Sponte Consideration of Child Support*

In raising the issue of child support, the court presented the rationale therefor:

THE COURT: "Okay. Next problem, remind you of the fact that we do have I've read the order before I got on the bench and so forth and we now have someone who is earning a substantial amount of money. I think Mrs. ought to be aware of the fact that we have guidelines here in the State of Indiana and I would suggest to both of you to sit down and fill out a guideline sheet and find what support Mrs. ought to pay, you know, for what she is earning based on the gross amount. I'm at the point right now the Supreme Court is mandating us to order support whether we like it or not and as I have indicated to you that I'm on the committee that has that decision and that is the direction we are going...."

*Record*, p. 116.

■ The guidelines to which the court referred were approved by the Indiana Supreme Court for use in all child support determinations after October 1, 1989. Support awards determined by application of the guidelines are presumptively correct, although the presumption is rebuttable. Prior to October 1, 1989, the use of the guidelines was discretionary.

■ An examination of the guidelines and accompanying commentary indicates that their use is contemplated in the context of a *petition* to determine or modify support. *Support Guideline 3B* provides in part "A copy of the worksheet which accompanies these Guidelines shall be submitted to the court in each case *in which the court is asked to determine support....*" We are unable to locate any provision in the guidelines that mandate a trial court's *sua sponte* determination of child support in post-dissolution proceedings.

■ One of the stated purposes of the guidelines is the facilitation of settlements between parents. *Support Guideline 1, Preface.* Where parents agree that the needs of their children are being met under an existing court order, and neither is petitioning the court for modification, the court is not required to initiate modifications to conform existing orders to guideline amounts.

We do not suggest that modification of the existing support order would have been inappropriate, had a valid petition for modification been before the court. The Aliah divorce decree's order regarding support remains modifiable upon a showing of changed circumstances of a continuing and substantial nature. IC 31–1–11.5–17. The order that Ute contribute nothing for the support of the children "at this time" should not be construed so as to permanently deprive her children of support from a parent able to provide such support. *See, e.g., Brokaw v. Brokaw* (1980), Ind.App., 398 N.E.2d 1385, 1388.

■ The Indiana Child Support Guidelines are consistent with IC 31–1–11.5–12, which places a duty on either or both parents to support their child(ren), based on the resources of the custodial parent, standard of living had the marriage not dissolved, physical or mental condition of the child(ren), and the financial resources and needs of the non-custodial parent. The guidelines presume a division of the support obligation in proportion to each parent's weekly available income. Rarely will use of the guidelines result in no support

being awarded to a custodial parent. Even where a non-custodial parent is unemployed or underemployed and lacks specific job skills or training, the guidelines suggest that the parent's weekly gross income be set at the minimum wage level. Thus, some minimal level of support payment would be required.

■ Clearly an order such as that issued at the Aliahs' divorce would be a highly unlikely result of the application of guidelines mandatory *after October 1, 1989.* However, courts are not required or invited to revise all previously existing awards to achieve "appropriate" amounts under the new guidelines. Parents should not be discouraged from asserting rights to visitation or seeking clarification of prior court orders for fear that once in court, pre-existing support orders deemed satisfactory to the parties will be subjected to the court's *sua sponte* comparison with the new guidelines.

## II.

### *Use of Child Support Guidelines*

Secondly, Ute contends that the $85.00 child support award was inappropriately calculated. Although our disposition of the issue above necessitates reversal, we nevertheless address the second issue to avoid a further appeal, inasmuch as Hassan's brief indicates his current intention to seek child support, and a Petition to Modify may be expected in the future.

IC 31–1–11.5–17 provides that a child support order may be modified where there exists a substantial and continuing change in circumstances that makes the present order unreasonable. The change may result from a change in the income of the parents or changes in the expenses of child rearing which are specifically considered in the guidelines. Where modification is warranted due to such change in circumstances, application of the guidelines is appropriate. *Support Guideline 4.*

The amount of support required of Ute was determined by proper usage of these guidelines. The Aliahs each submitted worksheets disclosing gross income. The

"combined available weekly income" was determined to be $1,363.82. The corresponding guideline amount of the basic child support obligation for two children is $291.00. Of this amount, 74% is Hassan's obligation, and 26% is Ute's obligation, based on their respective incomes. Ute, as the non-custodial parent, was to tender 26% of $291.00, or $85.00, to Hassan in the form of child support payments.[1] *Support Guideline 3.*

■■ An obligor who seeks a deviation from the guideline amount must present evidence such that the court can conclude that an order for the guideline amount would be unjust or inappropriate under existing circumstances. *Id.* Ute presented no such evidence.

Reversed.

GARRARD and BUCHANAN, JJ., concur.

---

1. It is presumed that Hassan, as the custodial parent, spends his proportionate share directly on behalf of the children.