**Doris J. HALL, Appellant–Plaintiff,**

**v.**

**GAINER BANK and Prudential Insurance Company of America, Appellees–Defendants.**

**No. 46A03–9501–CV–10.**

Court of Appeals of Indiana.

Aug. 26, 1996.

Transfer Denied Feb. 18, 1997.

Robert A. Welsh, Harris Welsh & Lukmann, Chesterton, for Appellant–Plaintiff.

Fred M. Cuppy, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for Appellee–Defendant Gainer Bank.

Stephen A. Tyler, Blackmun, Bomberger & Moran, Highland, for Appellee–Defendant the Prudential Insurance Company of America.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff Doris J. Hall appeals the trial court's judgment in favor of appellees-defendants Gainer Bank and Prudential Insurance Company of America in her action for payment of life insurance proceeds. The evidence relevant to review is undisputed and recited below.

Doris' husband, James, was a commercial loan officer for Gainer Bank and its predecessor from September 1, 1974 through the time of his death in June 1987. James was diagnosed with leukemia in 1975. From August 1986 until June 1987 when he died, James was on disability status. Gainer considered James an employee of the bank at all times while he was on disability status.

During the fall of 1986, Prudential and Gainer entered into an agreement whereby Prudential would underwrite an employee group benefits plan for Gainer. The group benefits plan commenced January 1, 1987. At an enrollment meeting, the Gainer personnel officer who administered the employee benefits plan determined from the Prudential representative that a disabled employee could enroll in the benefits plan.

James was informed that he could enroll in the benefits plan. In the fall of 1986, James completed a form for the purpose of enrolling in the group benefits plan. James received a medical claim identification card following his enrollment. Copies of the plan benefits booklet prepared by Prudential were not distributed to Gainer employees until after James' death.

The benefits plan provided basic life insurance, optional life insurance, and major medical health insurance. From January 1, 1987 when the plan commenced until June 15, 1987 when James died, the plan paid health insurance claims for James in excess of $63,000.00. In May or early June 1987, Doris met with an officer of Gainer and received written confirmation of basic life insurance coverage in the amount of $36,000.00 and optional life insurance coverage of $71,000.00.

Upon James' death, the plan paid the $71,000.00 in optional life insurance to Doris but did not pay the $36,000.00 basic life insurance coverage. Prudential denied the benefits based upon James' failure to satisfy the active work requirement within the group benefits plan.

Doris filed her complaint for payment of the insurance benefits relying on *inter alia* ERISA (Employee Retirement Income Security Act), 29 U.S.C. § 1001 *et seq.*[1] The cause was tried, without the intervention of a jury, on June 3, 14, and 21, 1994. Pursuant to the parties' requests, the trial court entered findings of fact and conclusions of law. The trial court determined that Doris was not entitled to recovery. This appeal ensued.

---

1. State court has concurrent jurisdiction with federal court as to a claim under ERISA for entitlement to benefits. *See* 29 U.S.C.A. § 1132(a)(1)(B) through § 1132(e). *See e.g. Davis v. John Alden Life Ins. Co.*, 746 F.Supp. 44, 49 (D.Kan.1990); *Duffy v. Brannen*, 148 Vt. 75, 529 A.2d 643, 649 (1987). *Cf. Associates Inv. Co. v. Claeys*, 533 N.E.2d 1248, 1251 (Ind.Ct.App. 1989) (cited in *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 448–449 (1st Cir.1995)).

As restated, Doris raises the following issues for review:

(1) whether the trial court erred in failing to determine whether Gainer and/or Prudential acted as plan fiduciaries; and

(2) whether the trial court erred in failing to find that Gainer and Prudential were estopped to deny the claim based upon the active work requirement or that Gainer and Prudential waived their right to rely on the active work requirement.

The lengthy findings of the trial court, largely embodied in the above recitation of facts, culminated in the trial court's conclusions that it had jurisdiction and:

2. The waiver principle upon which plaintiff relies to ERISA claims cannot be applied by this court' since the particular principles on which plaintiff relies are fairly narrow and waiver is a broad concept.

3. Waiver and estoppel are distinct and related concepts and although estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to her detriment on that representation.

4. Although estoppel principles can be applied to certain ERISA actions and this Court must make a separate determination of the applicability of waiver principles to ERISA claims and the applicability of estoppel principles and the principles upon which plaintiff relies are not among them.

■■■ The purpose of special findings made pursuant to an Ind. Trial Rule 52 request is to provide˘ parties and reviewing courts with the theory upon which the case was determined in order to effectively preserve errors for review. *Foster v. Bd. of Com'rs of Warrick County*, 647 N.E.2d 1147, 1148 (Ind.Ct.App.1995). Special findings

must contain all facts necessary to support the trial court's judgment; thus, the judgment may not be affirmed on any ground not mentioned in the findings even though found in the record. *Id.* Instead, the findings must be adequate to support the decision. *Id.* The court's judgment will not be set aside unless it is clearly erroneous. *Id.* In making the determination whether the findings and or judgment are clearly erroneous, this Court will neither weigh the evidence nor judge the credibility of witnesses and will consider only the evidence, together with reasonable inferences therefrom, which supports the judgment. *Id.*

As noted above, the trial court's findings are grounded in the stipulated facts. Accordingly, the findings are not erroneous. Doris contends that the findings are deficient and that there is no nexus between the findings and the conclusions of law. The cursory conclusions do not shed light on the analysis which would lead to the stated inapplicability of estoppel and waiver. The claims that Gainer and Prudential were fiduciaries and that the active work requirement was vague and ambiguous were left unaddressed in the decision.

Doris first contends that the trial court erred by failing to determine whether Prudential and Gainer acted as fiduciaries for ERISA purposes. In *Varity Corp. v. Howe*, —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), Thomas, J., dissenting joined by O'Connor, J., and Scalia, J., the United States Supreme Court addressed *inter alia* the determination of ERISA fiduciary status, breach of the fiduciary obligation, and the efficacy of individual relief under ERISA.[2] The court affirmed the district court's finding Varity, as the employer, and Massey–Ferguson, as a subsidiary of Varity, acted as

---

**2.** While the circumstances in *Varity* differ from those in the present case insofar as the misrepresentations in *Varity* were intentional, the analysis is applicable. Because the evidence demonstrated intentional misrepresentations by Varity, the court declined to answer whether ERISA fiduciaries have a duty to disclose truthful information of their own initiative or in response to employee inquiries. *Id.* However, the court signaled its intent by granting transfer in *McLeod v. Oregon Lithoprint Inc.*, —— U.S. ——, 116 S.Ct. 1346, 134 L.Ed.2d 516 (1996), case below 46 F.3d 956

(9th Cir.1995), remanding the case to the circuit court for evaluation in light of *Varity*. In *McLeod*, the employee filed suit against the employer for failure to provide timely notification of her eligibility to apply for cancer insurance coverage. The circuit court affirmed the grant of summary judgment in favor of the defendants, her employer and the insurer, based upon a finding that a potential beneficiary could not recover money damages for breach of ERISA fiduciary duties. *Id.*, 46 F.3d at 960.

ERISA fiduciaries regarding representations made to employees. Although no one definition of fiduciary for ERISA purposes exists, the *Varity* court viewed the statutory provisions, together with general trust law and the factual context, to determine that Varity acted as an ERISA fiduciary.

■ The *Varity* court analyzed the determination of fiduciary status in light of ERISA provisions:

[A] 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan. ERISA § 3(21)(A).

*Id.* at ——, 116 S.Ct. at 1071; *see* 29 U.S.C. § 1002(21)(A).

■ The court looked at the factual context in which statements regarding the pension plan were made, including the plan-related nature of the forum in which the statements were made and the plan-related authority by those who made the statements, to conclude that the employer was acting as a fiduciary. *Id.* at ——, 116 S.Ct. at 1073. Here, the general statement that disabled employees could enroll in the benefits program was made at a meeting for the express purpose of outlining the benefits package by a representative of the benefits underwriter. The question was posed by the employer's administrator of plan benefits. The administrator communicated James' eligibility to James who enrolled in the benefits program. The provision containing the active work requirement was not communicated to James nor was a plan description given to the employees until after his death. The circumstances here reveal that the statements regarding eligibility were made at a plan-related forum by those with plan-related authority.

Further, Gainer provided Doris with a written affirmation of James' eligibility when requested by Doris. Prudential paid two components of the benefits package without raising the active work requirement: health care benefits and optional life insurance coverage. In light of the ERISA requirements, Gainer and Prudential exercised discretion with regard to management of the plan. James was allowed to enroll in the plan, $63,000.00 in health related benefits was paid pursuant to the plan, and $71,000.00 in life insurance was paid according to the plan. The active work requirement, equally applicable to the benefits actually paid, was not viewed as a barrier to those payments. Implicitly, Gainer and Prudential exercised a measure of discretion in allowing the benefits paid. *See Varity*, —— U.S. at ——, 116 S.Ct. at 1077 (plan administrator acts as fiduciary when making discretionary determination whether claimant is entitled to benefits under terms of plan documents).

Also, the Group Contract explicitly reserves discretion in the administration of the plan for Gainer and Prudential. The "Contract Holder," Gainer, had the discretion to determine such matters as employee class for benefits purposes. Prudential, as drafter of the Group Contract, had discretion to determine whether an employee had satisfactorily met the "evidence of insurability" requirement. Here, Gainer and Prudential retained discretionary authority with regard to the administration of the plan.[3]

Moreover, within the Group Insurance Contract, the references to the work requirement, the eligibility for insurance, the eligibility when disabled, and the end of insurance allow Gainer and Prudential discretion. In the definition section, the active work requirement is "[a] requirement that an Employee be actively at work on full time at the Employer's place of business, or at any other place that the Employer's business requires the Employee to go."

Within the eligibility clause, the contract provides:

An Employee is full-time if regularly working for the Employer at least the number of hours in the Employer's normal full-

---

3. Also, the plan allowed for waiver of the active work requirement under some circumstances. Presumably, Gainer and Prudential had discretionary authority to determine whether the circumstances were met.

time work week for the Employee's class, but not less than 30 hours per week. In the case of a partner or proprietor of the Employer, that work must be in the conduct of the Employer's business.

The contract regarding the end of insurance states, in pertinent part:

**End of Employment:** An Employee's employment ends when the Employee is no longer actively at work on a full-time basis for the Employer. But, for insurance purposes, the Contract Holder may consider the Employee as still employed and in the Covered Classes for the insurance during certain types of absences from full-time work. The Contract Holder decides which Employees with those types of absences are to be considered as still employed, and for how long. In doing this, the Contract Holder must not discriminate among persons in like situations.

An Employee may be considered as still employed up to any time limit for the Employee's type of absence. When so considered, the Employee's insurance under the Coverage will be continued only while the Employee is paying contributions for it at the time and in the amounts, if any, required by the Contract Holder (whether or not that insurance would otherwise be Non-contributory Insurance). But it will not be continued after it would end for a reason other than end of employment. The types of absences and the time limits are those below, unless a provision of the insurance states otherwise.

**Eligible Types of Absences
from Full-time Work**  **Time Limit**

Disability, part-time employment or retirement ........... None

Gainer and Prudential are fiduciaries, pursuant to ERISA requirements.

■ Next, Doris asserts that Gainer and Prudential are estopped to deny payment of the benefits. A party asserting promissory estoppel must demonstrate that:

(1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party suffered detriment; and (4) the complaining party suffered detriment; and (4)

the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise.

*Hall v. Cropmate*, 887 F.Supp. 1193, 1198 (S.D.Ind.1995), quoting *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir. 1994). Simply put, estoppel arises when one party makes a misleading representation to another party and that party reasonably relies to his detriment on the representation. *Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990) (estoppel principles apply to ERISA claims).

■ The stipulated facts establish: a Prudential representative orally represented that disabled employees could enroll in the benefits plan; a Gainer representative made written representation that James' was entitled to benefits as a disabled employee; James enrolled in the plan based upon the representations and tendered the employee contribution premium payments due; benefits under the plan were paid to James and later to Doris after James' death; and no plan documents were distributed to James or other Gainer employees until after James' death.

Prudential contends *inter alia* that because its representation was oral, Doris cannot recover. In *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758–759 (7th Cir.1994) and *Hall*, 887 F.Supp. at 1198, the courts analyzed the contention that only written representations would support a claim for estoppel. Such is not the case. Concern is diminished regarding oral representations when considering whether an employee is a plan participant because such representations are usually made by higher level employees than representations such as whether a certain medical procedure is covered. *See Miller*, 39 F.3d at 759.

Both Prudential and Gainer contend *inter alia* that Doris did not detrimentally rely upon the misleading letters because James was not insurable under the circumstances. Here, if James' reliance upon the misrepresentations was reasonable, he was deprived of the opportunity to attempt to meet the

eligibility requirements [4] or in the alternative to attempt to obtain other insurance. Once James was unequivocally informed that he was eligible, he enrolled in the benefits program and tendered the necessary premiums, he had no reason to make further inquiry into his eligibility.

Prudential summarily contends that Doris cannot prevail on the estoppel claim because estoppel is a common-law claim preempted by ERISA. As noted above, estoppel principles do apply to ERISA claims. *See Black,* 900 F.2d at 115.

The balance of Gainer's argument denying the applicability of estoppel alleges that it was without knowledge of any right it had to assert the active work requirement in order to abandon the right. However, Gainer contends that Doris should be charged with knowledge of the requirement and that the onus should have been placed on Doris to attend the enrollment meetings. The argument ignores reality and ERISA law. The stipulated facts lead inexorably to the conclusion that had James attended the meeting concerning the change in benefits, he would not have ascertained different information about his eligibility or been in any better position to ascertain the truth.

It is noteworthy that notice of the plan terms must be forwarded to participants and beneficiaries within a specific time frame, usually within 90 days after becoming a participant or beneficiary. *See* 29 U.S.C.A. § 1024(b). James enrolled in the plan and was entitled to plan information. *See Moothart v. Bell,* 21 F.3d 1499, 1506 (10th Cir. 1994) (plan participants need not show prejudice or injury from failure to provide plan documents for recovery under penalty provisions). It follows that it was incumbent upon Gainer and Prudential as fiduciaries, administrators and purveyors of the plan, and such discretionary function is retained by them in the plan documents, to know whether James was eligible or ineligible based upon his status and to provide James with a plan description which would have allowed him to ascertain whether he was eligible.[5]

Under the circumstances in the present case, James' reliance upon the misrepresentations was reasonable. Prudential and Gainer are estopped to deny James' eligibility for the plan benefits.

Doris' contention that Prudential waived the active work requirement need not be addressed based upon the above analysis. The decision of the trial court is not supported by the uncontroverted evidence and the law applicable thereto. Therefore, the decision of the trial court is reversed. The cause is remanded for entry of a judgment consistent with this opinion.

Reversed and remanded.

ROBERTSON and FRIEDLANDER, JJ., concur.

---

**4.** Evidence was presented at trial that James' condition, while steadily deteriorating, would have allowed him to meet the active work requirement for at least one 30–hour period had he known of the active work requirement. Further, the evidence indicated that had James requested an opportunity to return to work, a Gainer representative would have recommended that James be allowed to do so. Prudential's speculation that he may not have chosen to do so does not advance its position.

**5.** It is noteworthy that under the present circumstances, provision of the plan summary may have triggered inquiry by James as to his eligibility; however, such inquiry may have led to the same result inasmuch as the Halls were provided with written acknowledgment of James' eligibility when the Halls made inquiry just before James' death.

Also a May 1987 letter authored by Prudential representative, Linda King, to a Gainer representative indicated that James had not met the active work requirement. The evidence shows that James was not informed of the requirement, the determination of his eligibility, or the benefit ramifications.