**In re the Marriage of Troy D. COHOON, Appellant–Respondent,**

**v.**

**Daphne D. COHOON, Appellee–Petitioner.**

**No. 49A04–0109–CV–400.**

Court of Appeals of Indiana.

June 27, 2002.

---

Bryan Lee Ciyou, Ciyou & Dixon, P.C., Indianapolis, Indiana, Attorney for Appellant.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-respondent Troy D. Cohoon ("Father") appeals the trial court's contempt order. We affirm.

### Issues

Father raises two issues for our review, which we restate as follows:

I. whether a contempt petition was properly before the trial court where the parties' settlement agreement required all child support, custody, and visitation disputes to be resolved with binding arbitration; and

II. whether the trial court properly held Father in contempt for failing to pay child support.

### Facts and Procedural History

On February 14, 1996, Father and appellee-petitioner Daphne D. Cohoon ("Mother") were married. On August 29, 1996, the parties had a child, M.C. On January 1, 1999, Father filed a petition for dissolution. Father and Mother then entered into a settlement agreement ("settlement agreement") in which the parties agreed that

[a]ny dispute between the parties as to child support, custody, or visitation shall be submitted to and resolved by binding arbitration in Indiana, so long as one party remains, resides or is a resident of

Indiana, within five (5) days of an arbitrator being selected, same being the intention of the parties to rapidly resolve conflicts in this interstate case. Appellant's App. at 17. The settlement agreement also provided, "[Father] to pay child support in the amount of $80.00 per week, all as set forth on the child support worksheet annexed hereto." *Id.* at 20. On June 21, 1999, the trial court approved the settlement agreement and incorporated it into the divorce decree.

On August 10, 2000, Mother filed a petition for modification of the settlement agreement and a petition for a contempt citation for Father's alleged nonpayment of child support. On August 25, 2000, Father filed a motion to dismiss Mother's petitions alleging that the petitions were not properly before the trial court because the parties had agreed to resolve all child support disputes with binding arbitration. On March 6, 2001, Mother withdrew her petition for modification. On March 7, 2001, the trial court held a hearing on the contempt petition. At the hearing, Father made a continuing objection to all of the evidence presented on the ground that the contempt petition was not properly before the trial court because the issue of support should have been submitted to binding arbitration pursuant to the settlement agreement. *See* Tr. at 7–9.

Following the hearing, Father requested that the trial court enter findings of fact and conclusions thereon. The trial court's order dated, July 23, 2001, provides in part,

### [FINDINGS OF FACT]

7. That [the settlement agreement] states that "Any disputes between the parties as to child support, custody, or visitation shall be submitted to and resolved by *binding arbitration* in Indiana."

8. That the Court and the parties' counsel conducted a telephonic pre-trial conference on March 6, 2001 regarding the parties' dispute as to the requirement of "binding arbitration" over the issues set for hearing. The Court found that whether a party is in contempt of the prior order is not encompassed within the binding arbitration provision of the [settlement agreement] and that this Court has jurisdiction over enforcement of its orders.

. . . .

14. That the parties attached to the [settlement agreement] a "Child Support Worksheet Supplement" wherein the parties agreed to give father a 10% visitation credit of $9.33 for "regular visitation" and another $3.98 reduction to defray Dad's portion of the travel expenses. That the total amount of the reductions equals of [sic] $13.31 per week.

15. That the Child Support Worksheet Supplement states that the father will spend up to 15 weeks a year with the child which should qualify as "regular visitation" and for the expenses father might have on 1½ trips per year for a companion to fly with the child.

. . . .

19. There has [sic] been 90 weeks between the date of the final decree and the date of the hearing on March 7, 2001.

20. If father's worksheet "visitation credit" of $13.31 per week is multiplied by 90 weeks, then the total visitation credit to father equals is [sic] $1,197.90.

. . . .

22. The parties stipulated at the hearing that Father had on his own, without agreement of the parties, abated child support by [ ] 100% during extended visitation for 25 weeks resulting in fa-

ther taking another visitation credit of $2,000.

23. In effect, Father has taken 90 weeks of pro-rated visitation credit at $1,166.38 *and* 25 weeks of 100% abatement at $2,000.00 for a total visitation credit of $3,166.38 since the date of decree.

24. That the parties' [settlement agreement] is clear and unambiguous. The Child Support Worksheet Supplement clearly states that the Father's extended visitation of 15 weeks annually "certainly qualifies for regular visitation" and that the Father is entitled to a deduction.

25. The parties have also stipulated that Father is otherwise current in his child support obligation but for the $2,000.00 abatement taken by father.

26. That the Father's non-payment of child support was willful and wanton and that Father is in arrears in his child support obligation in the amount of Two Thousand Dollars ($2,000.00) as of March 2, 2001.

. . . .

## CONCLUSIONS OF LAW

1. That the Marion County Visitation Guidelines, which were in effect at the time of the parties' Agreement, allows for a 50% abatement for extended visitation of seven consecutive days or more.

2. The Indiana Child Support Guidelines allow for a 10% visitation credit where the Non-custodial parent regularly exercises alternate week-end visitation and the Court may consider abating support in amount not to exceed fifty percent for periods of visitation of seven (7) days or longer. . . .

. . . .

4. . . . . The parties clearly contemplated defraying the cost of long distance extended visitation by pro-rating the 50% abatement over a period of 52 weeks a year.

5. That Father is not entitled to a 50% abatement of support for extended visitation under the Marion County Visitation Guidelines *and* a weekly visitation credit if he is not exercising both types of visitation.

6. Under I.C. 31–16–12–6, if the Court finds that a party is delinquent as a result of an intentional violation of an order of support, then the Court may find the party in contempt.

7. That as a prevailing party in a contempt action, [Mother] is entitled to a presumption of fees under Marion County Family Law Rule 10(C).

8. Without regard to economic resources, once a party is found in contempt, the trial court has "the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions." 713 N.E.2d 348 at 355, Alder v. Alder, (Ind.App.1999).

9. That Indiana Supreme Court's Rules for Alternative Dispute Resolution and the Marion County Family Law Rules specifically provide for *mediation* of domestic relations cases, not binding arbitration.

10. Although mediation and arbitration both fall under the rubric of ADR, arbitration is not the same as mediation. Arbitration involves a neutral third party who is authorized by the disputing parties to render a binding decision on the issues submitted to the arbitrator. Mediation does not rely on a neutral third party to render a binding decision, the mediator assists the parties in reaching a mutually acceptable agreement, subject to the approval of the Court.

11. The right to receive child support vests with the child and the parties may

not contract away the child's rights to support.

12. The Court serves to protect the best interests of the child. In a domestic relations context the Court retains jurisdiction to hear disputes or to approve agreements between the parties pertaining to custody, visitation and child support.

13. That the provision in the parties' Agreement which states that child support, custody, or visitation issues shall be resolved by "binding arbitration" is void as against public policy in that the agreement attempts to usurp the continuing jurisdiction of the Court over the issues concerning child support modifications, contempt actions, custody, and visitation.

Father now appeals.

### Discussion and Decision

■■ Initially, we note that Mother did not file an appellee's brief. "When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee." *Kladis v. Nick's Patio, Inc.*, 735 N.E.2d 1216, 1219 (Ind.Ct.App.2000). "[I]t is within our discretion to reverse the trial court's decision if the appellant makes a prima facie showing of reversible error." *Olive v. Olive*, 650 N.E.2d 766, 767 (Ind.Ct.App.1995). "Prima facie, in this context, is defined as 'at first sight, on first appearance, or on

the fact of it.'" *Burrell v. Lewis*, 743 N.E.2d 1207, 1209 (Ind.Ct.App.2001) (citation omitted).

"Because the trial court entered special findings of fact and conclusions of law, a showing of prima facie error requires a showing that the trial court's findings are clearly erroneous." *Day v. Ryan*, 560 N.E.2d 77, 84 (Ind.Ct.App.1990); *see also* Ind. Trial Rule 52(A). In determining whether the findings and/or judgment are clearly erroneous, we "neither weigh the evidence nor judge the credibility of the witnesses and will consider only the evidence, together with reasonable inferences therefrom, which supports the judgment." *Hall v. Gainer Bank*, 670 N.E.2d 891, 894 (Ind.Ct.App.1996), *trans. denied.*

### I. Binding Arbitration

■■ Father argues that trial court improperly ruled on the contempt issue because the parties' settlement agreement required that all child support, custody, and visitation disputes be submitted to binding arbitration.[1]

At the outset, we note that this is a case of first impression in Indiana. We also emphasize the many advantages of mediation and non-binding arbitration as methods to resolve child support, custody, and visitation disputes. These advantages include efficiency, informality, less animosity, and caseload reduction for the trial courts. Further, we strongly encourage

---

1. Father baldly asserts that the trial court's refusal to enforce the settlement agreement violates his rights under the Contracts Clause, Article I, Section 24, of the Indiana Constitution. His failure to provide cogent reasoning and citation to authority waives our review of this assertion. *See Carter v. Knox County Office of Family and Children*, 761 N.E.2d 431, 440 (Ind.Ct.App.2001); *see also* Ind. Appellate Rule 46 ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by cita-

tions to the authorities, statutes and the Appendix ... relied on...."). Father also asserts that the ability to contract for custody-related issues furthers the "time-honored right of the parents to establish a home and raise their children, which is constitutionally protected by the Fourteenth Amendment." Appellant's Br. at 9. Without more, however, we do not see how a trial court's refusal to enforce a binding arbitration clause regarding child support, custody, or visitation disputes violates a parent's due process rights.

divorcing parents to utilize these methods to amicably resolve such disputes.

Additionally, we recognize a " 'very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties.' " *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997) (citation omitted). However, "[w]here a properly formed agreement contravenes the public policy of Indiana ... courts have traditionally said that it is void and unenforceable." *Straub v. B.M.T.*, 645 N.E.2d 597, 598 (Ind.1994).

[W]hether an agreement is void on public policy grounds is a question of law to be determined from the surrounding circumstances of a given case. Where public policy is not explicit, we look to the overall implications of constitutional and statutory enactments, practices of officials and judicial decisions to disclose the public policy of this State. Where there is not a clear manifestation of public policy we will find an agreement void only if it has a tendency to injure the public, is against the public good or is inconsistent with sound policy and good morals.

One well-established public policy of this State is protecting the welfare of children. Expressed by all three branches of Indiana government, this policy is of the utmost importance. In keeping with this public policy, Indiana courts have from time to time voided agreements reached by parents. Agree-ments which yield up a support opportunity for a child have been especially suspect. We have treated custodial parents who receive child support as trustees of the payments for the use and the benefit of the child. Neither parent has the right to contract away these support benefits. The right to the support lies exclusively with the child.

*Id.* at 599 (citations omitted).

While Indiana courts have encouraged divorcing couples to resolve disputes amicably, they have also consistently distinguished property and maintenance agreements from agreements governing child support, custody, and visitation. *See, e.g., Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n. 10 (Ind.1996) (noting that principles of freedom of contract governing property settlement between divorcing parties "[o]f course ... cannot apply to the child custody and support provisions of proffered settlement agreements. If there is one overriding policy concern in dissolution actions, it is protecting the welfare and interests of children.") (citations omitted). In *Meehan v. Meehan*, 425 N.E.2d 157 (Ind.1981), our supreme court recognized that "the legislature expressly limited the contractual capacity of the parties to finally and forever settle their child support obligations." [2] *Id.* at 160. The *Meehan* court continued,

Cognizant that the specter of a rule whereby support agreements were unilaterally binding would cloud the parties' negotiations, the legislature provided

---

**2.** In discussing the legislature's limitation on the contractual capacity of divorcing parties, the *Meehan* court referred to the statute now codified as Indiana Code Section 31–15–2–17. This statute encourages parties to settle disputes amicably by allowing them to agree to provisions for maintenance, disposition of property, and "the custody and support of the children of the parties." Ind.Code § 31–15–2–17(a). The statute prohibits modification of agreements regarding distribution of proper-ty, but, as the *Meehan* court noted, the statute does not contain the same prohibition regarding the modification of child support or custody agreements. *See id.* § 31–15–2–17(c) ("The disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent.").

them with a mutually-applicable standard, based on equitable considerations, against which the parties can assess the likelihood that a support agreement will subsequently be modified. If our courts deviate even slightly from this delicate balance struck by the legislature, parties will be inhibited in their negotiations and the purpose of the [Dissolution of Marriage] Act will be frustrated.

*Id.* Thus, our interest in encouraging divorcing couples to enter into binding agreements regarding property and maintenance does not extend to issues of child support, custody, and visitation.

Indeed, we have repeatedly held that trial courts must approve all child support, custody and visitation agreements. *See, e.g., Fields v. Fields,* 749 N.E.2d 100, 105 (Ind.Ct.App.2001) (acknowledging that "[a]s the trial court is obligated to ensure that the best interests of children be advanced, the trial court is afforded broad discretion in fashioning orders designed to ensure that child support be paid"), *trans. denied; Reno v. Haler,* 734 N.E.2d 1095, 1100–01 (Ind.Ct.App.2000) (concluding that while wife was bound by settlement terms regarding custody and visitation to which she agreed, "[n]o agreement between parties affecting custody automatically binds the trial court"), *trans. denied* (2001); *In re K.J.L.,* 725 N.E.2d 155, 159 (Ind.App. 2000) (acknowledging that while "the courts of this state have always encouraged parties to enter into agreements settling their own affairs, agreements pertaining to the support and custody of children are of a different character and will not be deemed effective unless, and until, they are approved by the court."); *Mundon v. Mundon,* 703 N.E.2d 1130, 1136 (Ind.Ct. App.1999) (holding that "where provisions are made in the interest of the support and custody of children, as opposed to those which merely set forth rights in property, *our legislature and sound public policy* dictate that the trial court must play a role, and a settlement agreement cannot be shielded from or circumvent the court's fulfillment of that duty") (emphasis added).

In *Pickett v. Pickett,* 470 N.E.2d 751 (Ind.Ct.App.1984), we recognized that "[a] trial court which entered the original dissolution decree and support order retains continuing jurisdiction during the child's minority to modify custody and support matters in the decree." *Id.* at 754. Trial courts are not permitted to review binding arbitration awards absent the showing of the criteria set forth in Indiana Code Section 34–57–2–13,[3] which governs the vacation of arbitration awards. Therefore, set-

---

3. Indiana Code Section 34–57–2–13 provides in relevant part:

(a) Upon application of a party, the court shall vacate an award where:
(1) the award was procured by corruption or fraud;
(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
(3) the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 6 of this chapter, as to prejudice substantially the rights of a party; or
(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section 3 of this chapter (or IC 34–4–2–3 before its repeal), and the party did not participate in the arbitration hearing without raising the objection;
*but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.*
(Emphasis added.)

tlement agreements requiring parents to resolve child support, custody, and visitation disputes with binding arbitration appear to improperly remove such disputes from the continuing jurisdiction of trial courts.

We are concerned that an arbitrator would not be required to follow pertinent statutory guidelines, e.g., the Indiana Child Support Guidelines, when arbitrating child support, custody, and visitation disputes. For example, in *City Sch. of E. Chicago, Ind. v. E. Chicago Fed. of Teachers, Local 511, A.F.T.*, 422 N.E.2d 656 (Ind.Ct.App.1981), a panel of this court considered whether an arbitrator exceeded the scope of his authority in awarding punitive damages and recognized that

> [s]ince arbitration arises through contract the parties are essentially free to define for themselves what questions may be arbitrated, the remedies the arbitrator may afford, and the extent to which the decision must conform to general principles of law. Where, as here, the agreement contains a broad arbitration clause courts have generally held that arbitrators are not bound by the principles of substantive law. . . . "If the arbitration agreement is silent with regard thereto, at common law and under most of the arbitration statutes, the arbitrators may declare law as they please, and no award will be vitiated because of their legal errors."

*Id.* at 662 (paragraph format altered from original) (citation and footnote omitted).

Given that the scope of judicial review of an arbitrator's award is quite limited, we are also concerned about the lack of recourse available to a parent if an arbitrator fails to follow the Child Support Guidelines. *See, e.g., Fort Wayne Educ. Ass'n v. Fort Wayne Cmty. Sch.*, 753 N.E.2d 672, 675 (Ind.Ct.App.2001) (concluding that "[j]udicial review of an arbitration award is

extremely narrow in scope. An arbitration award should only be set aside when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is shown. . . . The role of an appellate court in reviewing an arbitration award is limited to determining whether the challenging party has established any of the grounds permitted by the Uniform Arbitration Act.") (citations omitted); *see also* I.C. § 34–57–2–13(a).

Moreover, we are troubled by the potential inability of trial courts to enforce dissolution orders and settlement agreements that include binding arbitration clauses. As has happened in this case, determining whether trial courts have jurisdiction over cases in which the parties have agreed to submit child support, custody, and visitation disputes to binding arbitration certainly has the potential to foster the very litigation that binding arbitration clauses are intended to avoid. Thus, the inability to confidently predict whether and to what extent dissolution orders and settlement agreements requiring binding arbitration can be judicially enforced raises additional public policy concerns, such as an interruption in regular, periodic child support payments. *See Haycraft v. Haycraft*, 176 Ind. App. 211, 216, 375 N.E.2d 252, 255 (1978).

Finally, as this is a case of first impression in Indiana, we are guided by other jurisdictions that have considered to what extent binding arbitration may be used to resolve child support, custody, and visitation disputes. *See Brunner v. Economy Preferred Ins. Co.*, 597 N.E.2d 1317, 1318 (Ind.Ct.App.1992) (reviewing the case law of other jurisdictions to determine whether the failure to discover damages tolls the contractual period of limitations). Some jurisdictions prohibit parents from entering into binding arbitration agreements to resolve child support disputes because they are void as against public policy. *See,*

*e.g., Swentor v. Swentor*, 336 S.C. 472, 520 S.E.2d 330, 338 n. 6 (Ct.App.1999) (holding that binding arbitration agreements are enforceable only as to property and alimony disputes because " 'Family courts have continuing jurisdiction to do whatever is in the best interests of the child regardless of what the separation agreement specifies.' ") (citation omitted); *Crutchley v. Crutchley*, 306 N.C. 518, 293 S.E.2d 793, 796 (1982) (holding that trial court's order of binding arbitration regarding child support was void *ab initio* because "while provisions of a valid arbitration award concerning alimony may by agreement be made binding on the parties and nonmodifiable by the courts, provisions of the award concerning custody and child support continue to be within the court's jurisdiction and are modifiable").

Other jurisdictions permit divorcing parties to submit to binding and non-binding arbitration to resolve child support, custody, and visitation disputes so long as such arbitration awards are subject to judicial review. *See, e.g., Miller v. Miller*, 423 Pa.Super. 162, 620 A.2d 1161, 1165 (1993) (recognizing that arbitration awards governing custody are binding as between the parties but are not binding on the trial court once its jurisdiction is invoked); *Spencer v. Spencer*, 494 A.2d 1279, 1285 (D.C.1985) ("While a property right can be released by contract and arbitration of alimony could be binding and non-modifiable, provisions concerning custody and child support would continue to be within the court's jurisdiction despite prelitigation or mid-litigation arbitration or agreement."); *Faherty v. Faherty*, 97 N.J. 99, 477 A.2d 1257, 1262–63 (1984) (recognizing that arbitration process is available to resolve child support disputes but that "courts have a nondelegable, special supervisory function in the area of child support that may be exercised upon review of an arbitrator's award"); *Reynolds v. Whitman*, 40 Mass.App.Ct. 315, 663 N.E.2d 867, 869 (1996) (acknowledging that "[a]rbitration may offer a more efficient resolution of the dispute, reduce court congestion, and minimize the acrimony that often occurs with divorcing parties. Any award must, of course, be subject to review by the judge, who has the authority, and the obligation under G.L. c. 208 § 34, to make fair and equitable distribution of property"); *Kovacs v. Kovacs*, 98 Md.App. 289, 633 A.2d 425, 431 (1993) (holding "that a chancellor cannot adopt an arbitration award that concerns the beneficial interests of children without first exercising independent judgment to determine whether the best interests of the children are met by the award"); Tex. Fam.Code. Ann. § 153.0071(b) (providing in relevant part, "If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child.");[4] *but see Dick v. Dick*, 210 Mich. App. 576, 534 N.W.2d 185, 188–91 (1995) (acknowledging that divorcing parties may agree to submit child support and custody disputes to binding arbitration).

In conclusion, while we would strongly encourage parents to amicably resolve child support, custody, and visitation disputes with mediation or non-binding arbitration, which would be subject to judicial review, settlement agreements requiring parents to resolve child support, custody, and visitation disputes with largely non-reviewable binding arbitration are inconsistent with sound public policy and are therefore void.[5] Thus, Mother's con-

---

4. Indiana has not adopted a similar provision.

5. While we acknowledge that Indiana Dispute Resolution Rule 1.6 permits a trial court to

tempt petition was properly before the trial court.

## II. Contempt Citation

■ Father also argues that he should not be held in contempt because there is no evidence that he intended to willfully disobey the trial court's order; rather he contends that, "[h]e simply though[t] that there was an abatement." Appellant's Br. at 28.

■ In reviewing the trial court's contempt citation, we are mindful that

[w]hether a party is in contempt is a matter left to the sound discretion of the trial court, and we reverse the trial court's finding of contempt only if it is against the logic and effect of the evidence before it or is contrary to law. When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. "In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something." To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience."

*Topolski v. Topolski,* 742 N.E.2d 991, 994 (Ind.Ct.App.2001) (citations omitted). "Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt." *Meyer v. Wolvos,* 707 N.E.2d 1029, 1031 (Ind.Ct.App.1999), *trans. denied.*

It is undisputed that Father had not paid child support for the twenty-five weeks that he had had extended visitation with M.C. *See* Tr. at 14, 39. While the parties' computation of Father's child support obligation may have been confusing,[6] the settlement agreement, which was incorporated into the trial court's dissolution order, clearly establishes his child support obligation at $80.00 per week. Further, the child support worksheet attached to the settlement agreement explains the deviation from recommended child support obligation and states that "[t]he parties have therefore agreed to $80.00 per week in child support due to the aforementioned reasons." Appellant's App. at 26. Nothing in the dissolution order indicates that Father was entitled to a 100% abatement of his weekly support obligation during his extended periods of visitation with M.C.

Further, the trial court heard Father's testimony about the alleged 100% abatement during extended visitation and was free to believe or disbelieve it. *See Litzelswope v. Mitchell,* 451 N.E.2d 366, 370 (Ind.App.1983). Father is asking us to reweigh the evidence and judge the credibility of the witnesses. This we cannot do. There is uncontradicted evidence that Father was aware of the court order requiring him to pay weekly child support in the amount of $80.00 and that he did not pay such support for twenty-five weeks. This is sufficient evidence from which the trial court could have found that Father willful-

---

order "any civil or domestic relations proceeding" to binding arbitration "only upon the agreement of the parties[,]" we must conclude that this rule does not apply as it relates to resolving child support, custody, and visitation disputes.

6. In the Child Support Work Sheet Supplement, the parties considered that M.C. would be in Father's custody for fifteen weeks per year and spread Mother's work-related childcare expenses for the remaining thirty-seven weeks proportionally over a fifty-two-week period.

ly disobeyed the court order. *See id.* Thus, the trial court did not abuse its discretion in finding Father in contempt for his nonpayment of child support.

Affirmed.

MATHIAS, J., concurs.

RILEY, J., concurs as to Issue II and dissents as to Issue I, with opinion.

RILEY, Judge, concurring as to Issue II and dissenting as to Issue I.

While I concur with the majority's opinion as to Issue II, I respectfully dissent from the majority's opinion as to Issue I. It is my opinion that the trial court improperly ruled that the binding arbitration provision in Mother and Father's Agreement of Settlement was void for the reason that it is against public policy.

On July 23, 2000, Mother filed her Petition for Modification of Settlement Agreement and Petition for Contempt Citation. On August 25, 2000, Father filed his Motion for Rule to Show Cause by Troy D. Cohoon, and to Dismiss All Petitioner's Motions Before the Court. On March 6, 2001, a telephonic pretrial conference was conducted. During this conference, the trial court held that "whether a party is in contempt of the prior order is not encompassed within the binding arbitration provision of the Agreement of Settlement and Decree herein and that this Court has jurisdiction over enforcement of its orders." (Appellant's App. p. 50). Also, during the pretrial conference, Mother withdrew her Petition for Modification of Settlement Agreement. On March 7, 2001, the trial court held a hearing on the Petition for Contempt Citation. At the hearing, Father made a continuing objection to all of the evidence presented on the grounds that the Petition for Contempt Citation was not properly before the trial court. Father argued that the issue of support should have been submitted to binding arbitration pursuant to the Agreement of Settlement.

Mother's Petition for Contempt Citation was properly before the trial court, regardless of the binding arbitration provision in the Agreement of Settlement. It is within "the inherent powers of a trial court to use contempt as a remedy in the context of child support." *Pettit v. Pettit,* 626 N.E.2d 444, 446 (Ind.1993) (emphasis added). Thus, the issue of contempt did not fall within the scope of the binding arbitration provision. *See id.* With this in mind, the trial court had no need to delve into this issue any further to decide whether the Petition for Contempt Citation was properly before it, as trial courts always have the authority to rule on contempt issues. *See id.* It is my opinion that the trial court *sua sponte* raised and ruled on the issue of whether the binding arbitration provision in the Agreement of Settlement was void. The binding arbitration provision had nothing to do with the matter before the trial court. This is especially true considering the fact that Mother withdrew her Petition for Modification of Settlement Agreement.

Admittedly, this court has held that "agreements pertaining to the support and custody of children are of a different character and will not be deemed effective unless, and until, they are approved by the court." *In re Paternity of K.J.L.,* 725 N.E.2d 155, 159 (Ind.Ct.App.2000). "If there is one overriding policy concern in dissolution actions, it is protecting the welfare and interests of children." *Voigt v. Voigt,* 670 N.E.2d 1271, 1278 n. 10 (Ind. 1996). Furthermore, *sua sponte* action taken by a trial court does not automatically constitute advocacy, as a trial court is not required to allow improper procedures. *See Hudgins v. State,* 451 N.E.2d 1087, 1090 (Ind.1983).

On the other hand, in *Cavazzi v. Cavazzi*, 597 N.E.2d 1289, 1293 (Ind.Ct.App. 1992), the trial court ordered father to pay for the college expenses of his child. This court held that the trial court erred in its order, because mother's petition did not contain a request for college expenses. *Id.* "It was error for the court to order relief not requested by the petition." *Id.* Further, where parents agree that the needs of their children are being met under an existing court order, and neither is petitioning the court for modification, the court is not required to initiate modifications. *See Gielsdorf-Aliah v. Aliah,* 560 N.E.2d 1275, 1277 (Ind.Ct.App.1990).

In the present case, the Agreement of Settlement contained a binding arbitration provision concerning child support, custody, and/or visitation. There was not an issue before the trial court concerning child support, custody and/or visitation. Granted, there was an issue of contempt for nonpayment of child support. However, as previously stated, the issue of contempt for nonpayment of child support did not fall within the binding arbitration provision. Thus, the trial court raised an issue not submitted by either party. Then, it proceeded to rule on that issue. I find this to be an abuse of the trial court's authority. To rule otherwise, we would be encouraging trial courts to raise issues not presented by the parties. This is not the role of a trial court. Consequently, it would be my determination that the trial court erred by *sua sponte* raising and ruling on the issue of whether the binding arbitration provision in Agreement of Settlement was void, as it was not before the trial court to do so. *See Cavazzi,* 597 N.E.2d at 1293.